BRIAN J. STRETCH (CABN 163973)
United States Attorney

FILED

MAY -5 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUNITHA GUNTIPALLY,<br>VENKAT GUNTIPALLY,<br>PRATAP "BOB" KONDAMOORI,<br>and SANDHYA RAMIREDDI,<br><br>Defendants. | No. 16 00189 LHK PSG<br><br>VIOLATIONS: 18 U.S.C. § 371 (Conspiracy to Commit Visa Fraud, False Statements, Mail Fraud, Obstruction of Justice, and Witness Tampering); 18 U.S.C. § 1546(a) (Visa Fraud); 18 U.S.C. § 1001(a)(3) (Use of False Documents); 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 1505 (Obstruction of Justice); 18 U.S.C. § 1512(b)(3) (Witness Tampering); 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(6)(A)(ii) (Forfeiture).<br><br>SAN JOSE VENUE |

INDICTMENT

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

Relevant Individuals and Entities

At all times relevant to this Indictment:

1.  Defendant Sunitha GUNTIPALLY was the vice president of DS Soft Tech and of Equinett, a resident of Fremont, California, and the wife of Venkat GUNTIPALLY.

2.  Defendant Venkat GUNTIPALLY was the president of DS Soft Tech and of Equinett, a

1

resident of Fremont, California, and the husband of Sunitha GUNTIPALLY.

3. Defendant Pratap "Bob" KONDAMOORI was the president of SISL Networks, a resident of Incline Village, Nevada, and the brother of Sandhya RAMIREDDI.

4. Defendant Sandhya RAMIREDDI was the human resources manager and operations manager of DS Soft Tech, Equinett, and SISL Networks, a resident of Pleasanton, California, and the sister of KONDAMOORI.

5. DS Soft Tech was incorporated in the State of California on or about January 14, 2008, and was owned and controlled by Sunitha and Venkat GUNTIPALLY.

6. Equinett was incorporated in the State of California on or about August 18, 2011, and was owned and controlled by Sunitha and Venkat GUNTIPALLY.

7. SISL Networks was incorporated in the State of California on or about December 7, 2009, and was owned and controlled by KONDAMOORI.

### The H-1B Visa Program

8. The Immigration and Nationality Act, 8 U.S.C. § 1101, controls and regulates several categories of foreign nationals who may be admitted to the United States on a temporary basis as a nonimmigrant.

9. The H-1B Specialty Occupation Workers program allows an employer to temporarily employ a foreign worker in the United States on a nonimmigrant basis in a "specialty occupation." A specialty occupation requires the theoretical and practical application of a body of specialized knowledge and a bachelor's degree or its equivalent in the specific specialty. The Employment and Training Administration ("ETA") is an agency of the United States established within the U.S. Department of Labor ("DOL") and empowered to administer parts of the H-1B program.

10. Each employer seeking to employ an H-1B nonimmigrant is required to submit a completed Labor Certification Application, ETA Form 9035 ("LCA"). The LCA requires the employer to make several attestations, including confirming the existence and duration of the temporary job posting, the wages, working conditions, and benefits to be provided to the nonimmigrant.

11. Upon submission of the LCA and subsequent DOL certification, the employer of an H-1B nonimmigrant worker is required then to file a Form I-129, Petition for Nonimmigrant Worker

2

1  ("I-129 Petition") with U.S. Citizenship and Immigration Services ("USCIS"), a component of the U.S.
2  Department of Homeland Security ("DHS"), for the specific individual—the beneficiary of the H-1B
3  visa application process—hired in connection with the particular certification.

<u>Sponsorship of H-1B Visa Applications by Defendants' Companies</u>

5  12.  Since at least 2010, Sunitha and Venkat GUNTIPALLY, through their companies DS Soft Tech and Equinett, held themselves out as staffing specialists for technology firms based in Santa Clara County and elsewhere seeking to fill temporary positions with H-1B workers. The GUNTIPALLYs were the founders, owners, and persons with ultimate authority over the activities and operations of DS Soft Tech and Equinett, including the creation and submission of H-1B visa applications to the DOL, DHS, and other agencies of the United States. They also controlled the bank accounts of DS Soft Tech and Equinett.

13.  KONDAMOORI was the founder, owner, and person with ultimate authority over the activities and operations of SISL Networks, including the creation and submission of H-1B visa applications to the DOL, DHS, and other agencies of the United States. He also controlled the bank accounts of SISL Networks.

14.  RAMIREDDI was the operations manager and human resources manager of DS Soft Tech, Equinett, and SISL Networks, and the registered agent of SISL Networks.

15.  Beginning no later than 2010 and continuing through at least 2014, in the Northern District of California and elsewhere, the defendants submitted, and aided and abetted the submission of, more than one hundred H-1B visa applications for temporary nonimmigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks. These applications required the petitioner to represent to the United States, under penalty of perjury and criminal and civil penalties, the true name, location, terms, and duration of the underlying employment position to be filled by the stated beneficiary in each H-1B application.

16.  Through their ownership, direction, and control of DS Soft Tech and Equinett, the GUNTIPALLYs generated net profits from 2010 to 2014 of approximately $3.3 million and gross profits of approximately $17 million.

///

COUNT ONE: (18 U.S.C. § 371—Conspiracy to Commit Visa Fraud, Use of False Documents, Mail Fraud, Obstruction of Justice, and Witness Tampering)

17. The factual allegations contained in paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

18. Beginning at least in or about January 2010 and continuing through at least in or about June 2014, in the Northern District of California and elsewhere, the defendants,

> SUNITHA GUNTIPALLY,
> VENKAT GUNTIPALLY,
> PRATAP "BOB" KONDAMOORI,
> and SANDHYA RAMIREDDI,

and others, knowingly and intentionally conspired to commit offenses against the United States, namely to:

- knowingly obtain and receive a nonimmigrant visa, alien registration receipt card, and other document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to have been procured by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Section 1546(a);

- knowingly and willfully falsify, conceal, and cover up by a trick, scheme, and device a material fact, in a matter within the jurisdiction of the executive branch of the United States, specifically DHS, by, among other means, making false representations and material omissions about, among other things, SISL Networks, Traction HQ, Technia Energy, Global ERP & RFID, Kranem Corp., and SemSolar, Inc., in violation of Title 18, United States Code, Section 1001(a)(1);

- knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, in a matter within the jurisdiction of the executive branch of the United States, specifically DHS, by, among other means, making false representations and material omissions about, among other things, SISL Networks, Traction HQ, Technia Energy, Global ERP & RFID, Kranem Corp., and SemSolar, Inc., in violation of Title 18, United States Code, Section 1001(a)(2);

- knowingly and willfully make and use a false writing and document, knowing the writing and document to contain a materially false, fictitious, and fraudulent statement, in a matter within the jurisdiction of the executive branch of the United States, specifically DHS, by signing I-129 petitions, and contracts and end-client letters submitted in support of those petitions, in violation of Title 18, United States Code, Section 1001(a)(3);

- having devised and intending to devise a material scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, for the purpose of executing such scheme and artifice and attempting to do so, place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposit and cause to be deposit matters and things sent and delivered by private or commercial interstate carrier, and take and receive therefore, such matters and things, and knowingly cause to be delivered by mail and such carrier according to the

4

  direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, such matters and things, including by making false representations and material omissions about, among other things, the purported nature and existence of SemSolar, Inc., Traction HQ, Technia Energy, Global ERP & RFID, SISL Networks, and Kranem Corp., and the nature, existence, and scope of purported jobs at those and other companies, in violation of Title 18, United States Code, Section 1341;

- unlawfully, willfully, and knowingly, corruptly influence, obstruct, and impede, and endeavor to corruptly influence, obstruct, and impede, the proper and due administration of the law under which a pending proceeding was being had before a department or agency of the United States, namely DHS, DOL, DSS, and FDNS, and their respective investigations into visa fraud as well as other federal offenses relating to the application for H-1B temporary visas, by, among other means, making false representations and material omissions about, among other things, SISL Networks, Traction HQ, Technia Energy, Global ERP & RFID, Kranem Corp., and SemSolar, Inc., as well as contacting beneficiaries and witnesses in order to persuade them to provide false and misleading information to federal law enforcement agents, in violation of Title 18, United States Code, Section 1505; and

- knowingly and corruptly persuade and otherwise engage in misleading conduct toward beneficiaries by, among other means, advising the beneficiaries how to falsely answer questions from federal law enforcement agents about their end-client worksites, among other subjects, with the intent to hinder, delay, and prevent their communication to agents from DHS, DOL, and DSS, in violation of Title 18, United States Code, Section 1512(b)(3);

and conspired to defraud the United States through deceit, craft, trickery, and dishonest means for the purpose of attempting to defeat and obstruct the lawful functions of DHS, DOL, DSS, and FDNS, in the oversight and enforcement of the laws relating to immigration and other federal criminal laws and regulations.

## Summary of Criminal Conduct

19. Beginning in or about 2010 and continuing through in or about 2014, the defendants and others engaged in a series of overlapping and interlocking schemes to defraud the United States and other entities and persons by (a) submitting fraudulent documents to DHS and DOL, among other executive agencies, in connection with and in support of H-1B applications for temporary work authorizations; and (b) concealing their scheme and otherwise obstructing the United States' investigations into their conduct by, among other means, making false representations to federal law enforcement officers and tampering with witnesses, victims, and informants.

## The Visa Fraud Scheme

20. The defendants and others submitted, caused to be submitted, and aided and abetted the submission of fraudulent documents to the United States in connection with H-1B applications in order

to create a pool of H-1B beneficiaries who could thereafter be placed at legitimate employment positions in the Northern District of California and elsewhere. Through this scheme, the defendants reaped profits and gained an unfair advantage over competing employment-staffing firms.

21.     As part of the scheme to defraud, the defendants and others, by means of the U.S. Mail and commercial common carrier, submitted and caused to be submitted LCA forms, I-129 petitions, and supporting documentation, among other documents, that contained false representations and material omissions relating to, among other things, the nature and existence of purported end-client companies and the nature, existence, and scope of H-1B positions.

22.     The end-client companies listed in the defendants' H-1B applications either did not exist or never received the proposed H-1B workers, and never intended to receive those H-1B workers.

23.     Among the end-client companies listed in the defendants' H-1B applications was SemSolar, Inc., a company run by KONDAMOORI. Between approximately 2012 and 2013, the GUNTIPALLYs' companies, DS Soft Tech and Equinett, submitted approximately 22 separate I-129 petitions, signed under penalty of perjury by Sunitha GUNTIPALLY, for H-1B workers to be placed at SemSolar, Inc., where, according to the petitions, these employees would work on a software product called "Eftia Master.Scribe," which KONDAMOORI told government agents he was developing at SemSolar, Inc. In fact, at the time of the filing of the I-129 petitions, as the defendants well knew, KONDAMOORI and SemSolar, Inc., were not working on any such product, the defendants did not intend to place any of the H-1B workers at SemSolar, Inc., and none of the workers who received H-1B visas through the defendants' scheme ever worked at SemSolar, Inc.

24.     In addition, between approximately 2010 and 2014, the GUNTIPALLYs' companies, DS Soft Tech and Equinett, submitted more than one hundred additional I-129 petitions, signed under penalty of perjury by Sunitha GUNTIPALLY, for H-1B workers to be placed at other purported end-client companies, including but not limited to Traction HQ, SISL Networks, Technia Energy, Global ERP & RFID, and Kranem Corp. As the defendants well knew, these purported end-client companies did not have jobs for the defendants' H-1B workers, the defendants did not intend to place those workers at those end-client companies, and none of those workers were placed at those end-client companies.

///

25. Between approximately April 2012 and June 2012, in support of the above-mentioned fraudulent I-129 petitions to place workers at KONDAMOORI's company SISL Networks as an end-client company, RAMIREDDI knowingly signed approximately 21 contracts and 20 end-client letters containing information material to DHS that RAMIREDDI and the other defendants knew to be false.

26. Between approximately 2013 and 2014, KONDAMOORI's company SISL Networks, operating as a petitioning company, submitted approximately 27 separate fraudulent I-129 petitions, signed under penalty of perjury by KONDAMOORI, including approximately eight separate I-129 petitions for H-1B workers to be placed at Kranem Corp. As the defendants well knew, Kranem Corp. did not have jobs for those workers, and none of those workers ever worked at Kranem Corp.

27. The defendants sent, caused to be sent, and aided and abetted the sending of the above-mentioned fraudulent I-129 petitions through private and commercial interstate carriers and U.S. Mail.

<u>Concealment of the Visa Fraud Scheme</u>

28. In or about October 2013, the Office of Fraud Detection and National Security ("FDNS") at USCIS referred its investigation into the defendants and their affiliated companies, based on, among other things, the defendants' individual and collective roles in sponsoring and submitting fraudulent H-1B visa applications, to USCIS.

29. In or about October 2013, the U.S. Department of State's Diplomatic Security Service ("DSS") and DHS's Homeland Security Investigations ("HSI") opened a criminal investigation into possible visa fraud by the GUNTIPALLYs, KONDAMOORI, and their affiliated companies Equinett, DS Soft Tech, and SISL Networks.

30. During the course of the government's investigations, the following matters, among others, were material to each:

  a. the authenticity, reliability, and accuracy of information contained in the LCA forms, I-129 petitions, and other documents contained in the applications for H-1B visas filed by the defendants between 2010 and 2014;

  b. the nature of the operations of SemSolar, Inc., on or after 2012;

  c. the nature of the operations of Traction HQ on or after 2012;

  d. the nature of the operations of SISL Networks on or after 2012;

  e. the nature of the operations of Technia Energy on or after 2012;

  f. the nature of the operations of Global ERP & RFID on or after 2010;

  g. the nature of the operations of Kranem Corp. and Verseon on or after 2013;

  h. the nature of the operations of Slingshot on or after 2012; and

  i. the nature of the operations of Tunker USA on or after 2012.

31. For the purpose of concealing the scheme, deceiving the United States, and otherwise obstructing the investigation, the defendants undertook, among other means, the following steps:

  a. Sunitha and Venkat GUNTIPALLY, KONDAMOORI, and RAMIREDDI contacted multiple individuals who had fraudulently received H-1B visas, including but not limited to A.M., R.B., S.P.N., and S.M.K., in order to persuade them to give false and misleading statements to criminal investigators and thereby tamper with, hinder, and impede the agencies' investigation.

  b. The GUNTIPALLYs and KONDAMOORI contacted KONDAMOORI's nephew P.R., the CEO of Traction HQ, and provided P.R. with the names and photos of workers who (according to the defendants' H-1B applications) were supposed to be working at Traction HQ but who were not in fact working there.

  c. The GUNTIPALLYs and KONDAMOORI instructed P.R. to memorize the workers' names and faces; told P.R. that he would likely receive a visit from government agents; and instructed P.R. to lie to the investigators by corroborating that these H-1B workers were working at Traction HQ even though they were not.

  d. The GUNTIPALLYs and KONDAMOORI gave P.R. copies of falsified Traction HQ contracts, end-client letters, and passport biographic pages for these workers for P.R. to use as proof if questioned by investigators about whether Traction HQ employed these workers.

  e. Venkat GUNTIPALLY provided money to P.R. and instructed him to transfer the money back by writing checks to the corporate accounts of the GUNTIPALLYs' companies Equinett and DS Soft Tech to give the false appearance that the GUNTIPALLYs' companies were doing business with P.R.'s company, Traction HQ.

  f. In an interview with government agents, KONDAMOORI knowingly and intentionally provided materially false, misleading, and evasive answers about SemSolar, Inc., SISL Networks, Technia Energy, and Slingshot, among other topics.

  g. KONDAMOORI created the domain name kranem.net, set it to redirect to the website of end-client company Kranem Corp., and set up false email addresses associated with kranem.net.

Overt Acts

32. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

  a. On or about June 11, 2011, under penalty of perjury, Sunitha GUNTIPALLY signed and submitted a fraudulent I-129 petition for foreign worker P.M. to be placed at end-client company Global ERP & RFID. In submitting that petition and its supporting documentation, Sunitha GUNTIPALLY falsely represented that P.M. had a job offer and

statement of work documents from Global ERP & RFID, when the defendant then and there knew that these representations were false.

b. On or about October 17, 2011, under penalty of perjury, Sunitha GUNTIPALLY signed and submitted a fraudulent I-129 petition for foreign worker K.V. to be placed at end-client company Global ERP & RFID. In submitting that petition and its supporting documentation, Sunitha GUNTIPALLY falsely represented that K.V. had a job offer and statement of work documents from Global ERP & RFID, when the defendant then and there knew that these representations were false.

c. On or about June 8, 2012, RAMIREDDI signed a fraudulent contract and fraudulent end-client letter in support of an I-129 petition for M.D., claiming that M.D. would be placed at SISL Networks as an end-client company—information that was material to DHS and other government agencies and that RAMIREDDI and other defendants knew to be false.

d. On or about April 8, 2013, under penalty of perjury, Sunitha GUNTIPALLY signed and submitted a fraudulent I-129 petition for foreign worker S.P.N. to be placed at end-client company Traction HQ. In submitting that petition and its supporting documentation, Sunitha GUNTIPALLY falsely represented that S.P.N. had a job offer and statement of work documents from Traction HQ, when the defendant then and there knew that these representations were false.

e. On or about June 4, 2014, under penalty of perjury, KONDAMOORI signed and submitted a fraudulent I-129 petition for foreign worker V.S. to be placed at end-client company Kranem Corp. In submitting that petition and its supporting documentation, KONDAMOORI falsely represented that V.S. had a job offer and statement of work documents from Kranem Corp., when the defendant then and there knew that these representations were false.

f. On or about May 31, 2012, Venkat GUNTIPALLY sent to DHS, via the commercial delivery service FedEx, an I-129 petition for foreign worker A.M.

g. In or about 2013 or 2014, KONDAMOORI approached his nephew P.R., who was CEO of Traction HQ, and convinced P.R. to sign fake Traction HQ contracts and end-client letters for Equinett's and DS Soft Tech's H-1B workers.

h. In or about 2013 and 2014, the GUNTIPALLYs and KONDAMOORI provided P.R. with names and photos of workers who (according to the defendants' H-1B applications) were supposed to be working at Traction HQ, but who were not in fact working there. The GUNTIPALLYs and KONDAMOORI instructed P.R. to memorize those names and faces, telling P.R. that he would likely receive a visit from government agents and that he should be prepared to lie to the government agents by corroborating that those H-1B workers were working at Traction HQ. The GUNTIPALLYs and KONDAMOORI also provided P.R. with copies of falsified Traction HQ contracts, end-client letters, and passport biographic pages for these eight H-1B workers to use as proof to show government agents that Traction HQ employed these workers.

i. On a date unknown to the Grand Jury but no later than April 5, 2014, Venkat GUNTIPALLY provided P.R. with money and instructed P.R. to write checks to DS Soft Tech and to Equinett in an effort to make it appear that Traction HQ was engaged in business with DS Soft Tech and with Equinett, when in fact no such business had occurred.

j. On or about April 5, 2014, at Venkat GUNTIPALLY's direction, P.R. wrote checks to the corporate accounts of the GUNTIPALLYs' companies for $15,000, $8,000, and $7,000.

k. On or about October 16, 2013, KONDAMOORI spoke with government agents and, in an effort to mislead them and conceal the conspiracy, falsely claimed to the government agents that he was developing a product at SemSolar, Inc., called "Eftia Master.Scribe" for which he needed H-1B workers.

l. During his interview with government agents on or about October 16, 2013, in an effort to mislead the agents and conceal the conspiracy, KONDAMOORI falsely claimed that he first met P.R., the CEO of Traction HQ, when P.R. worked for KONDAMOORI at a company called One Billion Watts. In fact, P.R. is KONDAMOORI's nephew.

m. During his interview with government agents on or about October 16, 2013, in an effort to mislead the agents and conceal the conspiracy, KONDAMOORI falsely claimed that Softbank, the parent company of Sprint, was an investor in KONDAMOORI's company SISL Networks. KONDAMOORI also falsely claimed that Sprint had asked SISL Networks to build remote telecom towers in order to provide better cell phone reception for Sprint customers.

n. On or about October 9, 2013, KONDAMOORI sent an email to RAMIREDDI, which RAMIREDDI forwarded on the same date to the GUNTIPALLYs. In the email, KONDAMOORI discussed his efforts to conceal the defendants' criminal scheme, including his creation of web domain name kranem.net and his creation of false email addresses.

o. On or about October 29, 2013, Sunitha GUNTIPALLY met with A.M., an H-1B worker petitioned by the GUNTIPALLYs' company DS Soft Tech, and coached A.M. how to lie to a government agent who was investigating the defendants' criminal activities.

p. On or about October 29, 2013, Sunitha GUNTIPALLY provided A.M. with false documents that would make it appear that A.M. had worked at one time at purported end-client company Technia Energy, even though, as Sunitha GUNTIPALLY well knew, A.M. had never worked there.

q. On or about October 29, 2013, after coaching A.M. on how to lie to the government agent, Sunitha GUNTIPALLY ordered A.M. to call the government agent and set up an interview. A.M. did so.

r. On or about November 4, 2013, RAMIREDDI sent an email to the GUNTIPALLYs and KONDAMOORI with the subject heading "Re: Richard from USCIS" concerning a visit that RAMIREDDI had received from a government agent.

s. On or about November 4, 2013, Venkat GUNTIPALLY replied to RAMIREDDI's email, copying Sunitha GUNTIPALLY and KONDAMOORI. Venkat GUNTIPALLY asked RAMIREDDI how she had answered the government agent's question, and stated that, in response to questions from the government agent, "we need to answer the same to be on the same page."

t. On or about November 14, 2013, Sunitha GUNTIPALLY spoke on the phone with R.B., an H-1B worker petitioned by the GUNTIPALLYs' company Equinett. R.B. informed Sunitha GUNTIPALLY that R.B. had been contacted by a government agent. Sunitha GUNTIPALLY coached R.B. on how to lie to the government agent. Among other things, Sunitha GUNTIPALLY instructed R.B. to tell the government agent that R.B.'s end-client company was Traction HQ, which Sunitha GUNTIPALLY knew was untrue. Sunitha GUNTIPALLY also told R.B. to claim in R.B.'s conversation with the government agent that R.B.'s supervisor at Traction HQ was P.R.; that R.B. worked on a project at Traction HQ called "DreamBox"; and that R.B.'s annual salary at Traction HQ

was approximately $62,000. As Sunitha GUNTIPALLY well knew, none of these claims was true.

u. On or about January 17, 2014, RAMIREDDI sent Venkat GUNTIPALLY an email with the subject line "List of Students who are not in project," which included a spreadsheet of Equinett and DS Soft Tech H-1B workers and the names of subject end clients where those H-1B workers were petitioned to work, but where they did not in fact work.

v. In or about February 2014, Sunitha GUNTIPALLY and RAMIREDDI visited Traction HQ's office and instructed an H-1B worker, S.P.N., to tell DHS agents that S.P.N. worked at Traction HQ on a project called "DreamBox," even though, as the defendants well knew, no such project existed and S.P.N. did not work at Traction HQ.

w. On or about February 10, 2014, Sunitha GUNTIPALLY ordered S.P.N. and other H-1B workers to report to Traction HQ's listed address every day between the hours of 9:00 am and 5:00 pm in the event that government agents conducted an unannounced site visit, even though S.P.N. and the other H-1B workers had no actual work to do at Traction HQ.

x. In or around February 2014, RAMIREDDI instructed S.P.N. to create a fake sick-leave letter that would make it appear that S.P.N. had previously taken a leave of absence from her job at Traction HQ, even though S.P.N. had never worked there.

y. On or about February 12, 2014, H-1B worker S.M.K. spoke with government agents and, at Sunitha GUNTIPALLY's direction, lied to the agents by claiming that she had worked in the past at end-client company Kranem Corp. After the government agents' interview of S.M.K. on or about February 12, 2014, S.M.K. called Sunitha GUNTIPALLY. Among other things, Sunitha GUNTIPALLY asked S.M.K. what the agents had asked S.M.K., and whether the agents had inquired about any other employees of the GUNTIPALLYs' companies.

z. On or about February 13, 2014, KONDAMOORI sent RAMIREDDI an email with the subject heading "Fake Timesheets" that contained as attachments fabricated timesheets for H-1B workers purportedly assigned to work at end-client companies SemSolar, Inc., and Traction HQ.

All in violation of Title 18, United States Code, Section 371.

<u>COUNTS TWO THROUGH THREE</u>:         (18 U.S.C. § 1546(a)—Visa Fraud; 18 U.S.C. § 2—Aiding and Abetting)

33. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

34. On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

SUNITHA GUNTIPALLY
and VENKAT GUNTIPALLY,

knowingly made under oath, and subscribed as true under penalty of perjury under 28 U.S.C. § 1746,

and aided and abetted the same, false statements with respect to material facts in an application, an affidavit, and a document required by the immigration laws and regulations prescribed thereunder, namely, in the I-129 petitions and supporting documentation for H-1B nonimmigrant worker applicants, by falsely representing that the below-listed applicants had job offers and statements of work documents from end-client company Global ERP & RFID, when the defendants then and there knew that these representations were false:

| Count | Filing Date | Name of Beneficiary |
|---|---|---|
| 2. | June 11, 2011 | P.M. |
| 3. | October 17, 2011 | K.V. |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

<u>COUNTS FOUR THROUGH NINE</u>:   (18 U.S.C. § 1546(a)—Visa Fraud; 18 U.S.C. § 2—Aiding and Abetting)

35.   The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

36.   On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

SUNITHA GUNTIPALLY,
VENKAT GUNTIPALLY,
and PRATAP "BOB" KONDAMOORI,

knowingly made under oath, and subscribed as true under penalty of perjury under 28 U.S.C. § 1746, and aided and abetted the same, false statements with respect to material facts in an application, an affidavit, and a document required by the immigration laws and regulations prescribed thereunder, namely, in the I-129 petitions and supporting documentation for H-1B nonimmigrant worker applicants, by falsely representing that the below-listed applicants had job offers and statements of work documents from companies specified in the petitions, when the defendants then and there knew that these representations were false:

///

///

///

| Count | Filing Date | Name of Beneficiary |
|---|---|---|
| 4. | May 31, 2012 | A.M. |
| 5. | April 8, 2013 | R.B. |
| 6. | April 8, 2013 | S.P.N. |
| 7. | April 8, 2013 | S.M.K. |
| 8. | April 8, 2013 | B.S. |
| 9. | April 8, 2013 | N.G. |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

<u>COUNTS TEN THROUGH ELEVEN</u>:     (18 U.S.C. § 1546(a)—Visa Fraud; 18 U.S.C. § 2—Aiding and Abetting)

37.   The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

38.   On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

SUNITHA GUNTIPALLY,
VENKAT GUNTIPALLY,
PRATAP "BOB" KONDAMOORI,
and SANDHYA RAMIREDDI,

knowingly made under oath, and subscribed as true under penalty of perjury under 28 U.S.C. § 1746, and aided and abetted the same, false statements with respect to material facts in an application, an affidavit, and a document required by the immigration laws and regulations prescribed thereunder, namely, in the I-129 petitions and supporting documentation for H-1B nonimmigrant worker applicants, by falsely representing that the below-listed applicants had job offers and statements of work documents from end-client company SISL Networks, when the defendants then and there knew that these representations were false:

| Count | Filing Date | Name of Beneficiary |
|---|---|---|
| 10. | April 17, 2012 | S.B. |
| 11. | June 8, 2012 | M.D. |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

///

13

COUNTS TWELVE THROUGH SEVENTEEN:        (18 U.S.C. § 1546(a)—Visa Fraud)

39. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

40. On or about the dates listed below, in the Northern District of California and elsewhere, the defendant,

PRATAP "BOB" KONDAMOORI,

knowingly made under oath, and subscribed as true under penalty of perjury under 28 U.S.C. § 1746, false statements with respect to material facts in an application, an affidavit, and a document required by the immigration laws and regulations prescribed thereunder, namely, in the I-129 petitions and supporting documentation for applicants, by falsely representing that the below-listed nonimmigrant worker applicants had job offers and statements of work documents from companies specified in the petitions, when the defendant then and there knew that these representations were false:

| Count | Filing Date | Name of Beneficiary |
|---|---|---|
| 12. | April 8, 2013 | T.H. |
| 13. | April 8, 2013 | H.K. |
| 14. | April 8, 2013 | F.A.S. |
| 15. | April 1, 2014 | P.A. |
| 16. | June 4, 2014 | A.S. |
| 17. | June 4, 2014 | V.S. |

All in violation of Title 18, United States Code, Section 1546(a).

COUNTS EIGHTEEN THROUGH TWENTY-FOUR:        (18 U.S.C. § 1001(a)(3)—Use of False Documents; 18 U.S.C. § 2—Aiding and Abetting)

41. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

42. On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

SUNITHA GUNTIPALLY,
VENKAT GUNTIPALLY,
PRATAP "BOB" KONDAMOORI,
and SANDHYA RAMIREDDI,

knowingly and willfully made and used a false writing and document knowing it to contain a materially false, fictitious, and fraudulent statement, in a matter within the jurisdiction of the executive branch of the United States, specifically DHS, by signing I-129 petitions for the applicants listed below, signing contracts and end-client letters in support of those petitions, and aiding and abetting the same:

| Count | Filing Date | Name of Beneficiary |
|---|---|---|
| 18. | April 17, 2012 | S.B. |
| 19. | April 18, 2012 | A.M. |
| 20. | May 10, 2012 | R.G. |
| 21. | May 23, 2012 | L.M. |
| 22. | June 5, 2012 | N.B. |
| 23. | June 8, 2012 | M.D. |
| 24. | June 12, 2012 | M.G. |

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

<u>COUNTS TWENTY-FIVE THROUGH TWENTY-EIGHT</u>:    (18 U.S.C. § 1341—Mail Fraud;
                                                 18 U.S.C. § 2—Aiding and Abetting)

43.    The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

44.    On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

SUNITHA GUNTIPALLY,
VENKAT GUNTIPALLY,
PRATAP "BOB" KONDAMOORI,
and SANDHYA RAMIREDDI,

having devised and intending to devise a material scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, for the purpose of executing such scheme and artifice and attempting to do so, placed in a post office, and in an authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things sent and delivered by private or commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly caused to be delivered by mail and such carrier according to the direction thereon,

and at the place at which it was directed to be delivered by the person to whom it is addressed, such matters and things, including by making false representations and material omissions about, among other things, the purported nature and existence of SISL Networks, Kranem Corp., Technia Energy, Traction HQ, Technia Energy, and the nature, existence, and scope of purported H-1B positions at those companies, and aided and abetted the same, for the purpose of illegitimately acquiring H-1B visas:

| Count | Sent Date | Description of Mailing |
|---|---|---|
| 25. | May 31, 2012 | I-129 Petition and Supporting Documents for Beneficiary A.M. |
| 26. | June 8, 2012 | I-129 Petition and Supporting Documents for Beneficiary M.D. |
| 27. | April 1, 2013 | I-129 Petition and Supporting Documents for Beneficiary S.M.K. |
| 28. | April 8, 2013 | I-129 Petition and Supporting Documents for Beneficiary S.P.N. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT TWENTY-NINE:       (18 U.S.C. § 1505—Obstruction of Justice)

45. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

46. On or about October 16, 2013, in the Northern District of California, the defendant,

PRATAP "BOB" KONDAMOORI,

unlawfully, willfully, and knowingly, corruptly influenced, obstructed, and impeded, and endeavored to corruptly influence, obstruct, and impede, the proper administration of the law under which a pending proceeding was being had before a department or agency of the United States, namely DHS, DOL, DSS, and FDNS, and their respective investigations into visa fraud, as well as other violations of federal criminal laws relating to the applications for H-1B visas, by making false representations including, among other things, that KONDAMOORI and SemSolar, Inc., were developing a product called "Eftia Master.Scribe" for which KONDAMOORI required H-1B workers, that Softbank, Sprint's parent company, was an investor and business partner of SISL Networks, and that KONDAMOORI was a general partner of Focus Ventures.

All in violation of Title 18, United States Code, Section 1505.

///
///

16

COUNT THIRTY: (18 U.S.C. § 1512(b)(3)—Witness Tampering)

47. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

48. On or about October 29, 2013, in the Northern District of California, the defendant,

SUNITHA GUNTIPALLY,

knowingly and corruptly persuaded, attempted to corruptly persuade, and otherwise engaged in misleading conduct toward beneficiary A.M. by advising A.M. how to mislead a government agent in an investigative interview concerning the defendants' criminal activities, and by providing A.M. with false documents to make it appear that A.M. had worked at purported end-client company Technia Energy, with the intent to hinder, delay, and prevent A.M.'s communication to agents from DHS and DSS, relating to the commission of federal offenses relating to A.M.'s application for an H-1B visa.

All in violation of Title 18, United States Code, Section 1512(b)(3).

COUNT THIRTY-ONE: (18 U.S.C. § 1512(b)(3)—Witness Tampering)

49. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

50. On or about November 14, 2013, in the Northern District of California, the defendant,

SUNITHA GUNTIPALLY,

knowingly and corruptly persuaded, attempted to corruptly persuade, and otherwise engaged in misleading conduct toward beneficiary R.B. by advising R.B. how to mislead a government agent by claiming, among other things, that R.B. worked at end-client company Traction HQ on a project called "DreamBox," with the intent to hinder, delay, and prevent R.B.'s communication to agents from DHS and DSS, relating to the commission of federal offenses relating to R.B.'s application for an H-1B visa.

All in violation of Title 18, United States Code, Section 1512(b)(3).

COUNT THIRTY-TWO: (18 U.S.C. § 1512(b)(3)—Witness Tampering)

51. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

52. On a date unknown to the Grand Jury but in or around November 2013, in the Northern District of California, the defendant,

SUNITHA GUNTIPALLY,

knowingly and corruptly persuaded, attempted to corruptly persuade, and otherwise engaged in misleading conduct toward beneficiary S.M.K. by advising S.M.K. how to mislead a government agent by claiming, among other things, that S.M.K. had worked at purported end-client company Kranem Corp., with the intent to hinder, delay, and prevent S.M.K.'s communication to agents from DHS and DSS, relating to the commission of federal offenses relating to S.M.K.'s application for an H-1B visa.

All in violation of Title 18, United States Code, Section 1512(b)(3).

COUNT THIRTY-THREE:   (18 U.S.C. § 1512(b)(3)—Witness Tampering; 18 U.S.C. § 2—Aiding and Abetting)

53. The factual allegations contained in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated by reference as if set forth in full herein.

54. From on or about February 7, 2014, to on or about February 14, 2014, in the Northern District of California, the defendants,

SUNITHA GUNTIPALLY
and SANDHYA RAMIREDDI,

knowingly and corruptly persuaded, attempted to corruptly persuade, and otherwise engaged in misleading conduct toward beneficiary S.P.N., and aided and abetted the same, by advising S.P.N. how to mislead a government agent by claiming, among other things, that S.P.N. worked at end-client company Traction HQ, with the intent to hinder, delay, and prevent S.P.N.'s communication to agents from DHS and DSS, relating to the commission of federal offenses relating to S.P.N.'s application for an H-1B visa.

All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

FORFEITURE ALLEGATION:   (18 U.S.C. §§ 981(a)(1)(C) & 982(a)(6)(A)(ii))

55. Paragraphs 1 through 54 of this Indictment are hereby realleged and incorporated by reference as if set forth herein.

56. Upon a conviction for Counts 1 through 17 of this Indictment, a violation of 18 U.S.C. § 1546(a) or conspiracy to violate the same, the defendants,

///

> SUNITHA GUNTIPALLY,
> VENKAT GUNTIPALLY,
> PRATAP "BOB" KONDAMOORI,
> and SANDHYA RAMIREDDI,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6)(A)(ii), any property, real or personal, (i) that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of conviction; or (ii) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of conviction.

57. Upon a conviction for Counts 25 through 28 of this Indictment, a violation of 18 U.S.C. § 1341 or conspiracy to violate the same, the defendants,

> SUNITHA GUNTIPALLY,
> VENKAT GUNTIPALLY,
> PRATAP "BOB" KONDAMOORI,
> and SANDHYA RAMIREDDI,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of conviction.

58. If, as a result of any act or omission of the defendants, any of said property

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty,

any and all interest defendants have in any other property up to the value of the proceeds traceable to said offense shall be forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

///
///
///
///

1  All in violation of Title 18, United States Code, Section 982(a)(6)(A)(ii) and (b)(1), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: 5 May 2016

A TRUE BILL

_____
FOREPERSON

BRIAN J. STRETCH
United States Attorney

_____
AMBER ROSEN
Deputy Chief, San Jose Branch Office

(Approved as to form: _____ )
AUSA Jonas Lerman